HAZARD v. HAZARD.

*Undue influence — what constitutes — Will — what will invalidate.*

Where there was reason to suspect that the father of the principal beneficiary exerted some influence over the mind of the testatrix in making the will, but it did not appear that it was such as to deprive the testatrix of the free exercise of her will at the time, *held,* not such undue influence as would invalidate the will.

The right of a testatrix to dispose of her property is absolute, and cannot be controlled by any evidence which falls short of establishing a defect of testamentary capacity or actual fraud or coercion.

APPEAL by John H. Hazard from a decree of the surrogate of Erie county, admitting to probate the last will and testament of

Maria B. Hazard, deceased. The appellant was a son of the testatrix. The respondents were Edward E. Hazard, another son, Morris Hazard, the minor son of Edward E., a beneficiary under such will, and Robert R. Hefford and Robert P. Wilson, the executors thereof.

The will in question was made eight days before the death of the testator, and a codicil thereto the next day preceding her death. By it, about $100,000 were disposed of as follows : $1,200 per year to appellant during life; $1,200 per year to the respondent, Edward E. Hazard during life, and the rest, residue and remainder, after the payment of a legacy of $1,000 to the sister-in-law of testatrix, to Morris, the minor son of Edward E. Hazard.

The will was made during the last sickness of deceased, which was caused by an injury received by her in falling from a carriage. It was shown before the surrogate that during that sickness Edward E. Hazard visited her frequently, and evidence was introduced tending to show that·he conversed with his mother in relation to her property and its disposition, and respecting his brother and his brother's marriage. It was clearly established that her mind was sound and usually clear at the time the will and codicil were executed.

*Perry G. Parker*, for appellant, cited *Marvin* v. *Marvin*, 4 Keyes, 9; *Tyler* v. *Gardiner*, 35 N. Y. 559; *Kenne* v. *Johnson*, 60 ·Barb. 69, 74; *Forman* v. *Smith*, 7 Lans. 443; *Jackson* v. *Jackson*, 39 N. Y. 153; *Darley* v. *Darley*, 3 Bradf. 481, 507; *Nurhouse* v. *Godwin*, 17 Barb. 236.

*Spencer Clinton*, for respondents.

GILBERT, J. Upon the evidence before us, no doubt of the testamentary capacity of the testatrix can be rationally indulged. It·is unnecessary to refer to the legal test on this subject, for her mental condition, as described by the witnesses, was much better than the rule put forth by the appellant requires.

With respect to the charge of undue influence, we have carefully scrutinized the evidence, and are satisfied that it has not been sustained. There may be, perhaps, cause to suspect that the father of the principal beneficiary exerted some influence in procuring some of the obnoxious provisions to be inserted in the will. But

there is no direct proof of such influence. And if that fact were proved, it would not invalidate the will. The law requires that the influence be such as to deprive the testatrix of the free exercise of her will at the time of doing the testamentary act. *Gardiner* v. *Gardiner*, 34 N. Y. 155. To invalidate the will, it must be proved that it was procured by force, threats or coercion, destroying free agency. The exercise of the influence, springing from the family relation or from considerations of service, affection or gratitude, is not undue, even though it be pressed to the extent of unreasonable importunity. *Clapp* v. *Fullerton*, 34 N. Y. 197; *Tyler* v. *Gardiner*, 35 id. 559; *Dean* v. *Negley*, 41 Penn. 312. The right of a testatrix to dispose of her property is absolute, and cannot be controlled by any evidence which falls short of establishing a defect of testamentary capacity, or actual fraud, or coercion. Evidence that the testatrix had been influenced in making the will would lead to no legal result. What influence, not amounting to fraud or coercion, would the law condemn? Such an inquiry would lead to an investigation of the motives and reasons operating on the mind of the testatrix, which would end only in confusion and doubt. It is, therefore, a wise and salutary rule which requires proof of actual coercion or fraud. Any other rule would render the power of testamentary disposition uncertain and of little value.

We have looked into the exceptions, but find none of them tenable.

The decree of the surrogate must be affirmed, with costs to be paid by the appellant.

*Decree affirmed.*